In the Matter of the REINSTATEMENT OF Coy Harlan McKENZIE,

To Membership in the Oklahoma Bar Association and to the Roll of Attorneys.

No. 4105.

Supreme Court of Oklahoma.

June 17, 1996.

As Corrected Aug. 7, 1996.

Dan Murdock, Oklahoma Bar Association, Oklahoma City, for Oklahoma Bar Association.

Gary A. Rife, Oklahoma City, for Coy H. McKenzie.

SUMMERS, Justice:

Petitioner Coy Harlan McKenzie seeks reinstatement after being disbarred on February 5, 1990. He was disbarred based on events arising out of his attorney-client relationship with one Luella Brady. This Court found, as did the trial panel, that Petitioner had violated the Rules of Professional Conduct by inducing his client to invest substantial sums of money in a race track in which Petitioner owned a significant interest. He served as her attorney in this venture even though their interests in the matter were at variance with each other. Prior to his disbarment he had once been disciplined, having received a public censure for his misdemeanor conviction of willful failure to file a tax return. *State ex rel. Oklahoma Bar Ass'n v. McKenzie,* 788 P.2d 1370 (Okla.1989).

As in other disciplinary matters, this Court does not sit in review of the trial panel's recommendation, but has exclusive original jurisdiction over reinstatement proceedings. *Matter of Reinstatement of McConnel,* 886 P.2d 471, 473 (Okla.1994); *Matter of Reinstatement of Kamins,* 752 P.2d 1125, 1129 (Okla.1988). The trial panels' recommendations are given great weight, but are merely advisory. *Id.* Our review of the record is *de novo. Id.* at 1129.

Rule 11.4, Rules Governing Disciplinary Proceedings, 5 O.S.1991, Ch. 1, App. 1–A, states that the burden is on the applicant seeking reinstatement to show that if readmitted the conduct of the applicant will conform to the high standards required of a member of the Bar. This heavy burden requires that the applicant show, by clear and convincing evidence, stronger qualifications than one seeking admission for the first time. *See McConnel,* 886 P.2d at 474.

Rule 11.5 requires that the trial panel make findings as to (1) the good moral character of the applicant, (2) whether applicant engaged in the unauthorized practice of law and (3) whether the applicant possesses the competency and learning in the law required for admission. *Matter of Reinstatement of*

*Thompson,* 864 P.2d 823 (Okla.1993). In addition to the considerations of Rule 11.4 and Rule 11.5, *Matter of Reinstatement of Kamins,* 752 P.2d at 1130, sets out eight other factors which must be reviewed in deciding whether an applicant can be readmitted: (1) the present moral fitness of the applicant, (2) the demonstrated consciousness of the wrongful conduct and disrepute brought on the profession, (3) the extent of the applicant's rehabilitation, (4) seriousness of the original misconduct, (5) conduct subsequent to discipline, (6) the time which has elapsed since the original discipline, (7) the applicant's character, maturity, and experience at the time of the discipline and (8) the legal skills and present competence of the applicant.

The trial panel found that more than five years had lapsed since Petitioner's disbarment, and that during this period Petitioner had not practiced law. The trial panel also found that during the period of disbarment Petitioner had continued to independently study the law by researching for attorneys, attending continuing legal education courses, and reading legal material. The panel, relying on the testimony of several witnesses, also found that Petitioner was of good moral character and showed remorse and regret for his conduct which led to disbarment. The trial panel unanimously recommends reinstatement.

Our *de novo* review of the record shows that the General Counsel for the Oklahoma Bar Association has signed a joint brief filed in this Court in support of reinstatement. However, at the hearing, the General Counsel had shown reluctance in making such a recommendation, and in fact had recommended that reinstatement be denied due to the severity of the original offense and the adverse effect that reinstatement would have in the eyes of the public.

Several attorneys and judges testified on behalf of Petitioner. They testified that prior to his disbarment, he was a reputable and well-liked attorney who took cases for people without much money and without charging large fees. They said he was always prepared and a vigorous advocate. They testi-

fied that he was remorseful for his actions, and that they would like to see him readmitted. One attorney testified that even though she knew he had been disbarred, he had been her mentor as she started her law practice. Petitioner testified that since his disbarment he had worked as a research assistant for several attorneys, and that he had authored several articles on racing pigeons. He testified that he was ashamed and embarrassed because of his behavior.

There is no doubt that the original conduct for which Petitioner was disbarred was serious. He was found to have used his relationship with a client to cause her to invest in a race track in which he was a major investor. To do so she advanced some money and she and Petitioner borrowed in excess of one million dollars. When the loans could not be repaid, both the client and Petitioner lost the pledged collateral (real estate and personal property). Although the client is now deceased, two of her relatives appeared at the reinstatement hearing, and testified that they opposed petitioner's reinstatement for the harm he had caused her and them.

More than six years have passed since his disbarment and more than ten years have passed since the misconduct occurred. Since his disbarment Petitioner has worked as a law clerk for virtually no pay. He still owes more than four thousand dollars in taxes, but has worked out a payment plan with the Internal Revenue Service. Thirteen witnesses, including three sitting judges and two former judges, gave cogent testimony in support of McKenzie's reinstatement. In essence they viewed his disbarment behavior as an aberration in an otherwise highly useful and ethical career. The record also reflects that in 1995 Petitioner participated in more than thirty hours of continuing legal education.

Petitioner testified that he receives several calls per week in which he must explain that he is no longer an attorney and cannot represent clients. Petitioner's reputation shows that he is willing to work for minimal fees if necessitated by his client's situation, and has been willing to help new attorneys for little or no payment.

We are concerned about Petitioner's former misconduct and its ramifications on the reputation of the Bar. It cannot be argued that Petitioner's former misconduct as an attorney can be taken lightly. However, the testimony in his behalf from attorneys, former clients, and judges, is that notwithstanding what he did, there is a need in the community for his services, and that he is deserving of reinstatement.

We agree with the recommendations of the trial panel, and find that Petitioner has met his burden by clear and convincing evidence. The Oklahoma Bar Association has filed an application for the payment of costs in the amount of $1466.84. It is therefore ordered that Petitioner, Coy Harlan McKenzie, be reinstated to the practice of law in Oklahoma and to membership in the Oklahoma Bar Association, and placed on the Roll of Attorneys, effective upon his payment of costs in the amount of $1466.84. Costs are to be paid within thirty days of the date this opinion is final.

ALMA WILSON, C.J., KAUGER, V.C.J., and LAVENDER, HARGRAVE and WATT, JJ., concur.

HODGES, SIMMS and OPALA, JJ., dissent.