2005 OK 34

**In the Matter of REINSTATEMENT OF John Robert SEELYE, to Membership in the Oklahoma Bar Association and to the Roll of Attorneys.**

**No. SCBD 4932.**

Supreme Court of Oklahoma.

May 10, 2005.

As Corrected May 11, 2005.

Rehearing Denied June 30, 2005.

Dan Murdock, General Counsel, Oklahoma Bar Association, Oklahoma City, OK, attorney for Respondent, State of Oklahoma ex rel. Oklahoma Bar Association.

John Robert Seelye, Muskogee, OK, pro se Petitioner.

WINCHESTER, V.C.J.

¶ 1 Petitioner sought reinstatement to The Oklahoma Bar Association and to the Roll of Attorneys pursuant to Rule 11, (Reinstatement), Rules Governing Disciplinary Proceedings (RGDP), 5 O.S.2001, Ch. 1, App. 1–A, as amended. The Trial Panel of the Professional Responsibility Tribunal recommended denial of petitioner's reinstatement request, and the assessment of costs of this proceeding. After *de novo* review, we deny reinstatement.

## STANDARD OF REVIEW

¶ 2 This Court has exclusive original jurisdiction over Bar disciplinary matters. *State ex rel. Okl. Bar Ass'n. v. Donnelly*, 1992 OK 164, ¶ 11; 848 P.2d 543, 545. Our standard of review is *de novo*. *State ex rel. Okl. Bar Ass'n. v. Lloyd*, 1990 OK 14, ¶ 8, 787 P.2d 855, 858. Recommendations of the Professional Responsibility Tribunal trial panel are merely advisory. *Matter of Reinstatement of Kamins*, 1988 OK 32, ¶ 18, 752 P.2d 1125, 1129. We are not bound by the trial authority's findings nor its assessments as to weight or credibility of the evidence. *State ex rel. Okl. Bar Ass'n. v. Raskin*, 1982 OK 39, ¶ 11, 642 P.2d 262, 265. Indeed, a thorough and complete exploration of all relevant facts is mandatory in our *de novo*

consideration of matters to regulate the practice of law and legal practitioners. *Tweedy v. Okl. Bar Ass'n.,* 1981 OK 12, ¶ 4, 624 P.2d 1049, 1052. While Rule 11.5, RGDP, (Findings Prerequisite to Reinstatement) requires the Professional Responsibility Tribunal to make certain findings regarding a petitioner's moral character, competency in the law and whether the petitioner engaged in any unauthorized practice of law during the period of suspension, disbarment or resignation, this Court wields the ultimate decision-making authority as to whether reinstatement is warranted. *Matter of Reinstatement of Smith,* 1994 OK 19, ¶ 3, 871 P.2d 426, 427. At the outset, we hold the record is adequate for this Court's *de novo* consideration of all essential facts, and for crafting the appropriate decision.

▅▅ ¶ 3 Petitioner herein bears the heavy burden of showing, by clear and convincing evidence, that reinstatement is warranted. *Matter of Reinstatement of Page,* 2004 OK 49, ¶ 2, 94 P.3d 80, 81. The instant case concerns an individual who this Court has disbarred. As such, the applicant must present stronger proof of qualifications than one seeking admission to the OBA for the first time. Rule 11.4 (Standard of Proof for Petitions for Reinstatement), RGDP. We consider eight factors, in determining fitness for reinstatement. *Matter of Reinstatement of Gassaway,* 2002 OK 48, ¶ 3, 48 P.3d 805, 806. These factors are: 1) applicant's present moral fitness; 2)applicant's demonstrated consciousness of conduct's wrongfulness and the disrepute said conduct brought upon the legal profession; 3) extent of rehabilitation of applicant; 4) seriousness of the original misconduct; 5) applicant's conduct after disbarment; 6) time elapsed since disbarment; 7) applicant's character, maturity and experience at time of disbarment; and 8) applicant's present legal competence. *Matter of Reinstatement of Gassaway,* 2002 OK 48, ¶ 3, 48 P.3d 805, 806; *Matter of Reinstatement of Kamins,* 1988 OK 32, ¶ 20, 752 P.2d 1125, 1130.

▅▅ ¶ 4 Precedent clearly dictates that "a felony conviction is not tantamount to a death sentence regarding the reinstatement of the license to practice law. Rather, each reinstatement decision is determined on a case-by-case basis, carefully weighing all factors." *Matter of Reinstatement of Anderson,* 2002 OK 64, ¶ 4, 51 P.3d 581, 583. Nonetheless, the more severe the offense, the heavier the burden an applicant faces, to gain reinstatement. *Matter of Reinstatement of Wright,* 1995 OK 128, ¶ 4, 907 P.2d 1060, 1062. We must give foremost consideration to protecting the public welfare, and must determine that reinstatement would not adversely affect the Bar. *Matter of Reinstatement of Cantrell,* 1989 OK 165, ¶ 2, 785 P.2d 312, 313.

### Evidence and Analysis

¶ 5 Petitioner was admitted to the Oklahoma Bar Association (OBA) and the practice of law in Oklahoma in July 1957. In March 1971, Petitioner was convicted of assault and battery with a dangerous weapon, the detailed facts of which are not pertinent to our decision herein. He has discharged fully the five-year sentence entered against him for that conviction.

¶ 6 In October 1971, petitioner's name was ordered stricken from the Roll of Attorneys in a Summary Disciplinary Proceeding, SCBD # 2266, based solely on the judgment and sentence entered in the trial court for the above-referenced felony. Subsequently, the Governor of Oklahoma granted petitioner a full and unconditional pardon, in 1975, following which petitioner began his numerous attempts to be reinstated to the OBA. In 1977, he filed a Petition for Reinstatement that we denied in 1981. Ten years later, in 1991, petitioner filed a Motion to Vacate the 1971 Order, which we also denied. In 2001, he filed a Petition for Limited Reinstatement that we treated as a Rule 11 Petition for Reinstatement. We denied this petition in February 2002. Finally, petitioner filed the instant petition, July 29, 2004.

¶ 7 After disbarment, petitioner pursued numerous career opportunities, including racing road bicycles, professional fashion photography and legal assistant for law firms in Tulsa and Muskogee.

¶ 8 We again will consider the eight factors articulated in *Matter of Reinstatement of*

*Gassaway,* 2002 OK 48, ¶ 3, 48 P.3d 805, 806, and *Matter of Reinstatement of Kamins,* 1988 OK 32, ¶ 20, 752 P.2d 1125, 1130, to determine petitioner's fitness for reinstatement.

¶ 9 The first factor, petitioner's present moral fitness, is a matter of some concern. Evidence exists that tends to suggest strongly, if not outright prove, that petitioner crossed the line and entered into the unauthorized practice of law when he drafted documents and aided in complex litigation that currently is the subject of a malpractice claim filed against the law firm that employed him. This factor does not weigh in favor of reinstatement.

¶ 10 The second factor, applicant's demonstrated consciousness of conduct's wrongfulness and the disrepute said conduct brought upon the legal profession, similarly does not weigh in his favor. While petitioner takes responsibility for the felony he committed, he continues to maintain that he did not intend the end result. While petitioner admits that he hired men and provided them transportation to attack his fiance's lover, he continues to maintain he had no idea that they would perform their jobs to the full extent that they did. He also offers, in his brief in chief, filed January 4, 2005, pp. 19–20, the suggestion that:

> ". . . it is beyond the knowledge of the Petitioner to explain why men, mostly, since Biblical times have committed similar unconscionable acts simply because of their involvement with a woman. This is not suggesting at all that a woman is the cause but it is to say that for whatever shortcomings exist in some men, a few, similar or even worse incidents have occurred throughout history as we know it."

¶ 11 Petitioner's attempt to align himself with Biblical characters and other men who have engaged in illegal conduct, using the love of a woman as a convenient excuse for lack of self control or moral shortcomings, does not convince us that he fully appreciates the disrepute his premeditated conduct brought upon the legal profession, or the full extent of the wrongfulness of his conduct.

Accordingly, the second factor does not weigh in favor of petitioner's reinstatement.

¶ 12 The evidence before us does not address the third factor, the extent of petitioner's rehabilitation, in that petitioner did not provide any concrete proof regarding his rehabilitation, other than the fact he has not committed another felony in the intervening years.

¶ 13 The fourth factor, the seriousness of the original misconduct, does not weigh in favor of petitioner's reinstatement. Indeed, we determine the nature of his original misconduct as a premeditated act, culminating in a felony that resulted in serious injuries to another person, weighs heavily against reinstatement.

¶ 14 The fifth factor, petitioner's conduct after disbarment, also weighs against reinstatement, for the reason that significant evidence exists that petitioner engaged in the unauthorized practice of law during the period of his disbarment.

¶ 15 While significant time has lapsed since petitioner's disbarment, to-wit: thirty-four years, the mere lapse of time does not dictate reinstatement. However, due to the extensive period in which petitioner has been disbarred, we determine that the sixth factor weighs in favor of reinstatement.

¶ 16 The seventh factor concerns petitioner's character, maturity and experience at the time of his disbarment. At the time of his disbarment in 1971, petitioner had been licensed to practice law for fourteen years. Thus, it cannot be said that he lacked maturity or experience at the time of his disbarment. Indeed, one would expect those qualities to be evident after such a long period of time as a licensed attorney. As to petitioner's character at the time of his disbarment, we determine that flaws must have existed in his character, flaws that enabled petitioner, a licensed attorney, to commission and commit a felony. Therefore, the seventh factor does not weigh in petitioner's favor.

¶ 17 The eighth and final factor we must consider today involves petitioner's present legal competence. The Trial Panel concluded, and we agree, that petitioner pos-

sesses the competency and learning in the law that is required for admission to the OBA. Evidence establishes he studied the law, attended continuing legal education courses and kept himself current as to recent developments in the law, all as required under Rule 11.5(c), (Findings prerequisite to reinstatement) RGDP. Accordingly, the eighth factor weighs in favor of petitioner's reinstatement.

¶ 18 Our analysis of the evidence leads us to hold that only two of the eight factors weigh in favor of petitioner's reinstatement, and that of the remaining six factors, some weigh heavily against such reinstatement. Additional evidence before us establishes that the 1971 Summary Proceeding is the only grievance ever filed against petitioner with the OBA. OBA is not aware petitioner ever has filed for bankruptcy protection, and is not aware of any claim or request for restitution made against respondent in connection with the subject offense. Further, OBA is unaware of any pending claims or actions against petitioner for debt collections, including any past due child support. The chief obstacle to petitioner's current reinstatement request remains the same as that existing when he previously applied, to-wit: the seriousness of petitioner's original misconduct. This obstacle, coupled with evidence of petitioner's possible engagement in the unauthorized practice of law, carries great weight in our analysis. Petitioner also fails to grasp the impact his felony conviction had, in bringing disrepute to the legal profession. Instead, he minimizes his felonious acts, essentially contending they were consistent with those of jealous men throughout the ages.

¶ 19 Accordingly, upon our *de novo* review of the evidence before us in the instant matter, including petitioner's proposed Brief in Chief that the Trial Panel declined to consider, we hold that petitioner's Petition for Reinstatement to the Roll of Attorneys and Membership in the Oklahoma Bar Association must be and is hereby denied.

¶ 20 OBA's Application to Assess Costs contains a total of $1,360.50 in reimbursable costs associated with the instant matter. OBA is entitled to reimbursement pursuant to Rule 11.1(c), (Petition for reinstatement) RGDP and OBA's application is hereby granted. Costs to be assessed against petitioner in the amount of $1,360.50 are to be paid within ninety days of the effective date of this opinion.

PETITIONER'S REINSTATEMENT REQUEST DENIED; PETITIONER ASSESSED COSTS OF PROCEEDINGS.

CONCUR: WATT, C.J., WINCHESTER, V.C.J., LAVENDER, KAUGER, TAYLOR, JJ.

CONCURS IN RESULT: COLBERT, J.

DISSENT: HARGRAVE, OPALA (JOINS HARGRAVE, J.), EDMONDSON, JJ. (JOINS HARGRAVE, J.).

HARGRAVE, J., Dissenting.

I WOULD ADMIT PETITIONER TO BE REINSTATED UPON SUCCESSFUL PASSAGE OF THE OKLAHOMA BAR EXAM.

OPALA, J., dissenting.

¶ 1 If Anglo–American forensic tradition for dispassionate judicature is to carry the day in this cause, the driving force of even-handed process that is due this long-pardoned ex-felon must **prevail over** any lingering residue of **instinctively harbored doubt, fear, suspicion and distrust.** These thinly veiled instincts (1) **tend to overfocus** on the gravity of the crime which had transformed **the petitioner** into a convicted felon and (2) help generate a resolve of visiting upon him a lifetime banishment from relicensure. The very presence of these instincts continues adversely to affect the basic fairness of the decisional process for petitioner's reinstatement. This court's *de novo* review should cast them aside to concentrate instead on the **many decades of his unblemished, if not also exemplary, life as a pardoned citizen of this State.**

¶ 2 I am hence unable to join in today's response to the petitioner's repeated plea for re-admission to the State Bar.